IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| P2BINVESTOR, INC. *Plaintiff and Counterclaim-Defendant*, v. DEXTER AXLE COMPANY, *Defendant and Counterclaim-Plaintiff.* | No. 19 C 4342 Judge Virginia M. Kendall |

## MEMORANDUM ORDER AND OPINION

On or about May 29, 2018, Dexter Axle Company ("Dexter"), a manufacturer of, *inter alia*, trailer axles and brakes, entered into an agreement to purchase fasteners from Factory Direct Logistics ("FDL"), a supplier of industrial fasteners. (Dkt. 1 ¶¶ 6–8.) FDL assigned its interest in the accounts receivable from this purchase order to P2Binvestor, Inc. ("P2Bi"). (Dkt. 37.) P2Bi filed this lawsuit alleging that Dexter breached its contract with FDL by failing to pay for over $1,000,000 worth of fasteners. (Dkt. 1 ¶ 38–44.) Dexter counterclaimed on the grounds that FDL failed to timely deliver conforming goods and that Dexter had to effect cover by obtaining conforming goods from another supplier. (Dkt. 14 at pp. 18–21.) P2Bi now moves to dismiss Dexter's counterclaim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that P2Bi cannot be held liable for any alleged breach by FDL. For the reasons set forth below, the Motion to Dismiss (Dkt. 20) is granted

### BACKGROUND

The following facts taken from Dexter's Counterclaim Complaint (Dkt. 14 at pp. 18–21) are assumed true for purposes of this Motion, and the Court draws all reasonable inferences in Dexter's favor. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

In 2016, Dexter entered into a business relationship with FDL whereby FDL agreed to supply commercial industrial fasteners ordered by Dexter. (Dkt. 14, Counterclaim ¶ 5.) From the outset of the business relationship, FDL failed to timely deliver conforming goods to Dexter. (*Id.* ¶ 6.) FDL's failures to deliver conforming goods were documented throughout the course of the business relationship, including through Non-Conforming Material Reports and twice-yearly Supplier Performance Evaluations. (*Id.* ¶ 7.) FDL gave Dexter multiple opportunities to improve its performance, but it failed to do so. (*Id.* ¶ 8.) Dexter therefore decided to discontinue its business relationship with FDL in 2017. (*Id.* ¶ 9.) But in order to ensure a seamless transition to a new supplier, Dexter issued a final purchase order to FDL on May 29, 2018. (*Id.* ¶ 10.) This final purchase order included an addendum for the express purpose of ending the ongoing relationship with FDL upon the completion of this final order. (*Id.*) FDL issued a sales order the following day, accepting the terms and conditions set forth in Dexter's purchase order and addendum. (*Id.* ¶ 11.) Pursuant to the purchase order, FDL was to deliver the fasteners by July 31, 2018. (*Id.* ¶ 12.) FDL did not meet the deadline, but Dexter extended the deadline on multiple occasions, all the way out to October 31, 2018. (*Id.* ¶ 13.) FDL delivered some goods by the October 31, 2018 deadline, but many were nonconforming and the order was not completed in full. (*Id.* ¶ 17.) Due to FDL's failure to timely deliver conforming goods, Dexter had to purchase goods from another supplier of fasteners, and Dexter suffered other damages. (*Id.* ¶¶ 18, 20.)

Before FDL and Dexter agreed to the May 29, 2018 purchase order, FDL entered into a Financing and Security Agreement ("FSA") with P2Bi. (Dkt. 37.) Pursuant to the FSA,

> "[FDL] hereby sells assigns and conveys [sic] to P2Bi . . . as absolute owner, and P2Bi hereby accepts from [FDL], all of [FDL's] right, title and interest in and to: (i) All of [FDL's Accounts Receivable], together with all

2

> rights of action accrued or to accrue on the [Accounts Receivable], including without limitation, full power to collect, sue for, compromise, assign, in whole or in part, or in any other manner enforce collection thereof in [FDL's] name or otherwise . . . ."

(*Id.* at p. 3.) The FSA defines Accounts Receivable as "any right of payment of the net amount for goods sold, or leased and delivered or services rendered in the ordinary course of [FDL's] business which is not evidenced by an instrument or chattel paper." (*Id.* at p. 1.) The FSA provides that its terms must be "construed in accordance with the laws of the State of Colorado without giving effect to the principles of conflicts of laws thereof." (*Id.* at p. 18.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Two questions are before the Court for purposes of this Motion. The first question is whether Dexter has sufficiently pleaded that FDL breached its contract with Dexter. If the answer to the first question is yes, then the second question becomes whether a promisor (Dexter) can sue the owner of the promisee's accounts receivable (P2Bi) for a promisee's (FDL) breach of contract where the owner of the accounts receivable has purchased the right to sue the promisor to enforce collection of payment due to the promisee.[1]

---

[1] With respect to the portion of purchase order that requires Dexter to pay FDL for the fasteners, Dexter is the promisor and FDL is the promisee.

The answer to the first question is straightforward. Dexter alleges that Dexter and FDL entered into a contract to deliver a certain quantity of a particular type of fasteners by a particular date in exchange for payment. Dexter further alleges FDL failed to deliver the contractually indicated quantity and quality of fasteners on the date to which the parties agree. Finally, Dexter incurred damages as a result of FDL's failure to meet that deadline, including but not limited to, the cost of effecting cover. Dexter has therefore alleged all the elements of breach of contract against FDL. *See Pepper Const. Co. v. Palmolive Tower Condominiums, LLC*, 59 N.E.3d 41, 66 (Ill. App. 2016) ("The essential elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff.").[2]

In order to answer the second question, it is important to first define the relationship among the parties. Although the FSA is in part a security agreement that grants P2Bi a security interest in certain property of FDL, the agreement is actually, in relevant part, a "factoring agreement." "Factoring is a financial transaction whereby a business sells its accounts receivables, which are debts owed to a business, to a third party." *Capital Partners Funding, LLC v. Trans-Spec Truck Serv., Inc.*, 12 CV 0587, 2012 WL 12884792, at *1 (S.D. Cal. Oct. 10, 2012); *see also In re Glick*, 568 B.R. 634, 646 (Bankr. N.D. Ill. 2017) (describing a factoring agreement as a contract under which one party purchases the accounts receivable of another party). The relevant portion of the agreement for purposes of this litigation is P2Bi's purchase of FDL's accounts receivable. Under this agreement, P2Bi is a "factor." Unfortunately, the parties' briefings do not cite any case law

---

[2] Illinois law governs whether Dexter has alleged that FDL breached the contract between Dexter and FDL because Illinois was the place of contracting and where a substantial proportion of the acts or omissions giving rise to this litigation took place. By contrast, the Court applies Colorado contract law to interpret the FSA because the FSA states that it must be construed pursuant to the laws of Colorado, and the Court must give effect to the explicit mutual intent of the parties to the contract. *See Gallagher v. Lenart,* 874 N.E.2d 43, 58 (Ill. 2007) (explaining that a court's "primary objective in construing a contract is to give effect to the intent of the parties").

specifically addressing whether a factor is liable to a promisor for a promisee's breach of contract. Likewise, the Court is unable to find any authority that speaks directly to that question.

Rather than citing case law specific to factoring agreements, the parties instead rely on analogous third-party beneficiary principles. Dexter argues that P2Bi was a third-party beneficiary of the contract between Dexter and FDL, and that as a third-party beneficiary, P2Bi is subject to any contract claims generally available against the contracting parties themselves. But that rule only applies to "direct third-party beneficiaries." *See Am. United Logistics v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003) ("Only a direct third-party beneficiary may enforce the contract because the contracting parties intended for the beneficiary to receive the benefit of the contract.").[3] A direct third-party beneficiary is a party "who, although not a party to the contract, the contracting parties *intended* to benefit from the contract." *Id.* (emphasis in original). Here, there is no evidence that Dexter intended to benefit P2Bi in any way by entering into a contract with FDL. Indeed, there are no allegations presented to the Court that Dexter even knew about FDL's relationship with P2Bi at the time it submitted the purchase order to purchase fasteners from FDL. And Illinois contract law applies a "strong presumption" against the existence of intended third-party beneficiaries. *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999). P2Bi was therefore an incidental third-party beneficiary[4] of the contract between FDL and Dexter, and as

---

[3] The FSA itself must be interpreted according to Colorado law, but deciphering the nature of the relationship between Dexter and P2Bi is not a question of interpretation of the FSA. Principles of contract law to which this Court is generally bound apply to the issue of determining the relationship between Dexter and P2Bi. In any event, the same principle applies under Colorado law. *See Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996) ("A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party.").
[4] *See* Restatement (2d) of Contracts § 302(b): "An incidental beneficiary is a beneficiary who is not an intended beneficiary."

5

such, Dexter has no legal right to sue P2Bi for FDL's alleged breach as though P2Bi were a party to the underlying contract. The Court must therefore grant P2Bi's Motion to Dismiss.[5]

## CONCLUSION

P2Bi was not a direct third-party beneficiary of Dexter and FDL's sales contract. Accordingly, Dexter cannot raise a breach of contract claim against P2Bi for FDL's alleged breach. P2Bi's Motion to Dismiss [20] is therefore granted.

_____
Virginia M. Kendall
United States District Judge

Date: March 25, 2020

---

[5] Dexter did not file a motion to dismiss in this case, so the Court has had no opportunity to assess whether similar principles apply to P2Bi's underlying claim.